## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ESTATE OF LAPORSHIA LORRAINE | : | **CIVIL ACTION** |
| MASSEY, by and through the | : | |
| Co-Administrators of her Estate | : | **NO. 14-5046** |
| Pauline Hodges and Mark W. Richardson, | : | |
| Esquire | : | |
| *Plaintiff* | : | |
| | : | |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA, | : | |
| SCHOOL DISTRICT OF | : | |
| PHILADELPHIA, W.C. BRYANT | : | |
| PROMISE ACADEMY, | : | |
| TEACHER JANE DOE, and | : | |
| PRINCIPAL GADDY | : | |
| *Defendants* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                      JULY 24, 2015

## MEMORANDUM OPINION

### INTRODUCTION

This civil action matter arises out of the tragic death of Laporshia Massey ("Laporshia" or "Decedent") on September 25, 2013, which was allegedly caused by an untreated asthma attack that occurred at school. Presently, before this Court are the following pleadings: (1) a motion to dismiss filed by the School District of Philadelphia ("District"), W.C. Bryant Promise Academy ("Bryant Academy"), and Principal Gaddy (collectively "Defendants") pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), [ECF 12], which seeks to dismiss the amended complaint filed by Pauline Hodges and Mark W. Richardson, Co-Administrators of the Estate of Laporshia Massey, ("Plaintiff"), [ECF 7]; and (2) Plaintiff's opposition. [ECF 13]. The issues in the motion to dismiss have been fully briefed by the parties and are ripe for disposition. For the reasons set forth herein, Defendants' motion to dismiss is granted, *in part*, and denied, *in part*.

## FACTUAL AND PROCEDURAL BACKGROUND

When ruling on the motion to dismiss, this Court must accept, as true, all relevant and

pertinent factual allegations in Plaintiff's amended complaint. *Fowler v. UPMC Shadyside*, 578

F.3d 203, 210-11 (3d Cir. 2009). In the amended complaint, Plaintiff alleges the following facts:

> Laporshia was born on February 21, 2001, and was a sixth grade
> student at Bryant Academy on the day of the events.[1] Laporshia
> suffered from chronic asthma which "is a medical condition that
> requires immediate intervention such that any delay can lead to
> death in a matter of moments,"[2] and used medication to treat her
> asthma.[3] Defendants knew of Laporshia's medical condition prior
> to September 25, 2013.[4]
>
> Plaintiff contends that the school followed a policy and/or custom
> that students could not "possess" or "use prescribed medication at
> the school without the supervision of a nurse."[5] On September 25,
> 2013, no nurse was on duty at Bryant Academy.[6] Plaintiff avers
> that "[t]he absence of a nurse from the school on that date was the
> result of decisions by Defendants, acting through high-level
> policymakers with final authority and/or acqui[e]scing to a
> longstanding custom and/or practice known to such high-level
> policymakers."[7] That morning, Laporshia complained to Defendant
> Teacher Jane Doe ("Teacher Doe") of "difficulty breathing,"
> attributed to an asthma attack.[8] Teacher Doe responded that no
> nurse was on duty and that Laporshia should "be calm."[9] Although
> Laporshia's condition worsened, Defendants did not contact
> emergency medical aid or take Laporshia to the hospital.[10] Instead,
> Laporshia "was kept at school, despite her having told Defendants
> that she could not breath[e]."[11] Later that afternoon, "[Laporshia]
> was driven from the school to her home."[12] Upon her arrival at
> home, she was immediately driven to the Children's Hospital of

---

[1] Am. Compl. ¶15.
[2] *Id.* at ¶16.
[3] *Id.* at ¶18.
[4] *Id.* at ¶19.
[5] *Id.* at ¶22.
[6] *Id.* at ¶21.
[7] *Id.*
[8] *Id.* at ¶23.
[9] *Id.* at ¶24.
[10] *Id.* at ¶¶25-26.
[11] *Id.* at ¶28.
[12] *Id.*

Philadelphia.[13] On the way to the hospital, Laporshia suffered a respiratory arrest.[14] Emergency medical workers and hospital staff commenced CPR, but were unable to revive her.[15]

The Medical Examiner of Philadelphia pronounced the cause of death as acute exacerbation of asthma.[16]

On September 2, 2014, Plaintiff filed a complaint against Defendants, City of Philadelphia ("City"), and Teacher Doe,[17] [ECF 1], which was amended on January 13, 2015. In the amended complaint, Plaintiff alleges (1) claims pursuant to 42 U.S.C. §1983 ("§1983") for (a) violations of the Fourth and Fourteenth Amendments; (b) liability under *Monell v. Dep't of Soc. Serv.*, 463 U.S. 658 (1978) ("*Monell*"); (c) supervisory liability; and (2) state law tort claims. [ECF 7]. On January 14, 2015, the City filed a motion to dismiss the amended complaint against it, [ECF 8], which was granted, [ECF 14]. On January 29, 2015, Defendants filed the instant motion to dismiss the amended complaint for failure to state a claim upon which relief can be granted. [ECF 12].

**LEGAL STANDARD**

When considering a Rule 12(b)(6) motion to dismiss, a court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler*, 578 F.3d at 210-11. The court must determine "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). The complaint must do more than merely allege the plaintiff's entitlement to relief; it must "show such an entitlement with its facts." *Id.* (citations

---

[13] *Id.* at ¶29.
[14] *Id.*
[15] *Id.* at ¶30.
[16] *Id.* at ¶31.
[17] This Court notes that Plaintiff has not served Teacher Doe with the summons or any complaint. As such, this Court will not address any claims with respect to Teacher Doe.

omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)) (alterations in original). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.* To survive a motion to dismiss under Rule 12(b)(6), "a plaintiff must allege facts sufficient to 'nudge [her] claims across the line from conceivable to plausible.'" *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 570).

## DISCUSSION

In the amended complaint, Plaintiff asserts (1) *federal* claims under §1983 against all Defendants for violations of Decedent's Fourth and Fourteenth Amendment constitutional rights, a *Monell* claim against the District and Bryant Academy, and a supervisory claim against Principal Gaddy; and (2) state law tort claims against all Defendants. In their motion, Defendants move to dismiss these claims. This Court will address each claim separately.

### Section §1983 Claims

Congress enacted 42 U.S.C. §1983 as a remedy for a violation of the United States Constitution and/or laws of the United States. *Morrow v. Balaski*, 719 F.3d 160, 165-66 (3d Cir. 2013). That is, §1983 does not provide substantive rights but, instead, "provides only remedies for deprivations of rights established elsewhere in the Constitution or federal laws." *M.U. v. Downingtown High Sch. E.*, 2015 WL 1893264, at *4 (E.D. Pa. Apr. 27, 2015) (quoting *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996)). Specifically, §1983 provides:

4

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. §1983. Thus, to assert a claim under §1983, a plaintiff must allege that a person acting under the color of state law violated a right secured by the Constitution and/or laws of the United States. *Morrow*, 719 F.3d 165-66.

Here, Plaintiff asserts Defendants violated Laporshia's constitutional rights under the Fourth and Fourteenth Amendments. For purposes of the §1983 claims, it is undisputed that a public school district and its employees, including the school principal, are state actors. *See Daniels v. Sch. Dist. of Phila.*, 982 F. Supp. 2d 462, 477 (E.D. Pa. 2013); *K.S. v. Sch. Dist. of Phila.*, 2007 WL 1009815, at *2 (E.D. Pa. Mar. 28, 2007); *Mohammed v. Sch. Dist. of Phila.*, 355 F. Supp. 2d 779, 782 (E.D. Pa. 2005). Thus, Defendants' alleged conduct will be reviewed.

### Fourth Amendment Seizure Claim

Plaintiff claims that Laporshia was subjected to an illegal seizure in violation of her Fourth Amendment rights.[18] Defendants contend that Plaintiff has not pled sufficient facts to reasonably infer that an intentional seizure of Laporshia occurred. This Court disagrees.

The Fourth Amendment protects against unlawful search and seizures conducted by state officials. *Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364, 370 (2009). Generally, the Fourth Amendment rights extend to public school students. *Safford*, 557 U.S. at 370 (analyzing plaintiff's Fourth Amendment claim in a public school setting); *New Jersey v. T.L.O.*, 469 U.S. 325, 336-37 (1985) ("In carrying out searches and other disciplinary functions pursuant to

---

[18] Am. Compl. ¶38.

[educational and disciplinary] policies, school officials act as representatives of the State [ ], and they cannot claim [ ] immunity from the strictures of the Fourth Amendment.").

While this Court has not been able to find any precedent specifically addressing an illegal seizure involving an asthmatic student, other cases in this circuit addressing the seizure of public school students, *albeit* in different contexts, offer guidance. For example, in *Shuman ex rel. Shertzer v. Penn Manor School District*, where a student was investigated for sexual misconduct, the Third Circuit Court of Appeals established a two-prong analysis of claims of unlawful search and seizure in the public school setting under the Fourth Amendment; *to wit*: first, there must have been a seizure and, second, the seizure must have been unreasonable under the circumstances. 422 F.3d 141, 146 (3d Cir. 2005).

The element of seizure is met when (1) "a reasonable person would have believed he was not free to leave," *Shuman*, 422 F.3d at 147 (quoting *Michigan v. Chesternut*, 486 U.S. 567, 573 (1988)), and (2) the seizure was intentional. *Bower v. Cnty. of Inyo*, 489 U.S. 593, 596-97 (1989) (stating that [a] "Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement . . . but only when there is a governmental termination of freedom of movement *through means intentionally applied.*") (emphasis in the original); *see also K.M. v. Chichester Sch. Dist.*, 2015 WL 568553, at *2 (E.D. Pa. Feb. 10, 2015) (holding that the plaintiff failed to allege illegal seizure because plaintiff failed to allege facts that allowed inference of an intentional seizure).

The determination of the second prong—reasonableness under the circumstances— balances public and private considerations relevant in a school setting. Specifically, the analysis balances "special consideration to the goals and responsibilities of [ ] public schools," *Shuman*, 422 F.3d at 149, and the students' interest in privacy. *Valentino*, 2003 WL 177210, at *5 (E.D. Pa.

6

Jan. 23, 2003); *see also Gottlieb ex rel. Calabria v. Laurel Highlands Sch. Dist.*, 272 F.3d 168, 171 (3d Cir. 2001) (recognizing that schools are in a unique position regarding students' constitutional rights because they maintain control of students; "students' movement and location are subject to the ordering and direction of teachers and administrators.") (citations omitted).

Here, in the amended complaint, Plaintiff alleges that Laporshia "was kept at school, despite her having told Defendants that she could not breath[e]" and that Defendants did "not permit[ ] Laporshia [ ] to leave school to obtain medical care"[19] or take medication that she used for her asthma.[20] Plaintiff also asserts that "Defendants' conduct [ ] was willfully, and deliberately indifferent to the health, safety and well-being of Laporshia Massey. . . ."[21] Thus, Plaintiff has sufficiently pled facts from which one could infer that Laporshia, a six grade minor, reasonably believed that she was not free to leave the school, that her freedom of movement was intentionally curtailed, and that the seizure was intentional. These allegations coupled with the alleged school policy and/or custom of not allowing students to possess and/or use prescription medication without a nurse on duty, the allegation that there was no nurse on duty on September 25, 2013, can appear to be a "governmental termination of freedom of movement *through means intentionally applied*." *Bower*, 489 U.S. at 596-97. Accordingly, Defendants' motion to dismiss Plaintiff's Fourth Amendment claim is denied.

---

[19] *Id.* at ¶¶27, 38.
[20] *Id.* at ¶18.
[21] *Id.* at ¶36.

*Fourteenth Amendment Due Process Claim*

Plaintiff also asserts a claim under the Fourteenth Amendment alleging the deprivation of Laporshia's liberty and life.[22] Defendants assert that the amended complaint is devoid of factual support for this Fourteenth Amendment claim. Again, this Court disagrees.

The Fourteenth Amendment provides that a state shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, §1. While courts recognize that the due process clause protects against the State's own violation of individual constitutional rights, the clause is "not a guarantee of certain minimal levels of safety and security" and imposes no affirmative duty on municipal entities to protect citizens from harm that may "come . . . through other means." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989). In *DeShaney*, the United States Supreme Court noted that the Constitution confers "no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." 489 U.S. at 196. The Court further stated, "[i]f the Due Process Clause does not require the State to provide its citizens with particular protective services, it follows that the State cannot be held liable under the Clause for injuries that could have been averted had it chosen to provide them." *Id.* at 197. The Third Circuit has interpreted *DeShaney* as "stand[ing] for the harsh proposition that even though state officials know that a person is in imminent danger of harm from another source, the Fourteenth Amendment imposes upon those state officials no obligation to prevent that harm." *Horton v. Flenory*, 889 F.2d 454, 457 (3d Cir. 1989); *see also Morrow*, 719 F.3d at 166 (stating, as "a general matter . . . a State's failure to

---

[22] *Id.* at ¶40.

8

protect an individual . . . simply does not constitute a violation of the Due Process Clause")
(quoting *DeShaney*, 489 U.S. at 197).

Accordingly, this Court finds that although Defendants had no constitutional obligation to
prevent an injury resulting from an asthma attack, the analysis of whether a violation occurred is
not concluded. As an exception to the general principle that a state does not have an affirmative
duty to protect a student from harm, a state may be held liable for injury when the state (1)
entered into a "special relationship" with the plaintiff, or (2) created a danger which resulted in
foreseeable injury to a discrete plaintiff. *See Morrow*, 719 F.3d at 167; *Kneipp*, 95 F.3d at 1205.
This Court will analyze whether either of the two exceptions applies to Plaintiff's claims.

## 1. Special Relationship Exception

While government entities generally do not have a constitutional obligation to protect
citizens from harm, the Constitution does "impose [ ] upon the State affirmative duties of care
and protection" where a "special relationship" exists between the state and a particular individual.
*Morrow*, 719 F.3d at 167. A state actor's duty to protect such citizens does not arise merely from
the state actor's "knowledge of the individual's predicament or from its expressions of intent to
help him." *Id.* at 168. Rather, such a duty arises only where the state actor takes a person into
custody without consent, and, by virtue of this custody, limits the individual's freedom to act. *Id.;*
*see also Torisky v. Schweiker*, 446 F.3d 438, 444-46 (3d Cir. 2006) (holding that the special
relationship exception "must be confined to cases in which a person is taken into state custody
against his will" through, for example, incarceration or institutionalization).

Courts in the Third Circuit have held that publicly funded schools do not have a special
relationship with their students that would create an affirmative duty to protect the students from
harm. *See Brown v. Sch. Dist. of Phila.*, 456 F. App'x 88, 90 n.5 (3d Cir. 2011) (noting the

9

existence of the special relationship exception, but stating "a student does not have that relationship with the state"); *Sanford v. Stiles*, 456 F.3d 298, 304 n.4 (3d Cir. 2006) (discussing *D.R. by L.R. v. Middle Bucks Area Vo. Tech. Sch.*, 972 F.2d 1364, 1372 (3d Cir. 1992) (holding that no special relationship exists because school children "remain residents in their homes" and can leave during the school day)).

In the amended complaint, Plaintiff has not pled any facts to distinguish this case from established precedent that a public school does not have a special relationship with its minor children sufficient to create a constitutional duty to protect those students from harmful acts encountered at school. Therefore, this Court finds that no special relationship existed between Decedent and Defendants.[23]

### 2. State-Created Danger Exception

In *Kneipp*, the Third Circuit adopted the doctrine of "state-created danger" to hold state actors liable under §1983. Specifically, the Court held that to assert a viable §1983 claim under the "state-created danger" exception, a plaintiff must allege facts to support each of the following elements: (1) the harm ultimately caused was foreseeable and fairly direct; (2) the defendant acted with a degree of culpability that shocks the conscience; (3) there existed some relationship between the defendant and the plaintiff such that the plaintiff was a foreseeable victim of defendant's acts or a member of a discrete class of persons subjected to the potential harm brought by the defendant's actions; and (4) the defendant used its authority to create a danger to the plaintiff or that rendered the plaintiff more vulnerable to danger than had the defendant not acted at all. 95 F.3d at 1205; *see also Brown*, 456 F. App'x at 91.

---

[23] Notably, Plaintiff does not purport to assert the Fourteenth Amendment claim under the special relationship exception.

In general terms, Defendants argue that the facts alleged in the amended complaint fail to satisfy any of the elements of the state-created danger theory except for the fourth element of a state-created danger claim, *i.e.*, whether Defendants affirmatively created a danger to Laporshia or rendered her more vulnerable to danger than had Defendants not acted at all. Although not each element was elaborated on, this Court will address each of the four elements of the state-created danger exception *ad seriatim*.

To support the first element of the state-created danger doctrine, a plaintiff must plead with factual basis that plaintiff's injury was foreseeable and fairly direct. *Kneipp*, 95 F.3d at 1205. That is, the plaintiff must allege "an awareness on the part of the state actor that rises to [the] level of actual knowledge or an awareness of risk that is sufficiently concrete to put the actors on notice of the harm." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 238 (3d Cir. 2008). Here, accepting as true the relevant factual allegations, Plaintiff has sufficiently pled that Laporshia had a serious medical condition, asthma, which she managed with medication.[24] In addition, Plaintiff alleged that Defendants knew of her medical condition "long [ ] before" September 25, 2013, the date of her asthma attack and that "the risk that an . . . 'asthma attack,' could be a fatal complication of the [D]ecedent's condition if not immediately treated and/or managed."[25] As pled, Plaintiff has sufficiently offered facts to support that Laporshia's harm and ultimate death, caused by an asthma attack that required immediate medical intervention,[26] was foreseeable and fairly direct, setting forth the first element of a state-created danger claim.

---

[24] *Id.* at ¶¶16-18.
[25] *Id.* at ¶¶19-20.
[26] *Id.* at ¶16.

11

As to the second element of a state-created danger claim, Plaintiff contends that Teacher Doe and Defendants acted with such a degree of culpability as to shock the conscience.[27] This degree of culpability depends on each individual context and the "level of culpability required to shock the conscience increases as the time state actors have to deliberate decreases." *Sanford*, 456 F.3d at 306. When a "state actor is not confronted with a 'hyperpressurized environment' but nonetheless does not have the luxury of proceeding in a deliberate fashion, the relevant question is whether the officer consciously disregarded a great risk of harm." *Id.* at 310. This standard also applies to medical emergencies. *Miller v. City of Phila.*, 174 F.3d 368, 375 (3d Cir. 1999); *see also Ziccardi v. City of Phila.*, 288 F.3d 57, 66 (3d Cir. 2002) (holding that in a medical emergency, the court required "proof that the defendants consciously disregarded, not just a substantial risk, but a great risk that serious harm would result.").

As stated, Plaintiff alleges that "Decedent had been diagnosed with asthma, which is a medical condition that requires immediate intervention such that any delay can lead to death in a matter of moments."[28] Plaintiff also alleges that Defendants knew of minor Laporshia's "pre-existing asthma" and had "actual and/or constructive knowledge of . . . the risk that an . . . 'asthma attack,' could be a fatal complication of the [D]ecedent's condition if not immediately treated and/or managed."[29] Despite this knowledge, Laporshia "was kept at school" even though she told Defendants that she was having difficulty breathing. Defendants simply responded that she should remain calm, and did "not permit[ ]" Laporshia to leave school to obtain medical care despite the facts that (1) the school maintained policies and/or customs of not permitting use of medication without a nurse on duty, (2) no nurse was on duty that day, and (3) Laporshia, who

---

[27] *Id.* at ¶47.

[28] *Id.* at ¶16.

[29] *Id.* at ¶¶19-20.

used asthma medication to treat her symptoms, was denied any medication.[30] In light of these facts pled, Plaintiff has sufficiently alleged Defendants' knowledge of and conscious disregard of Laporshia's particular risk of great harm from an asthma attack. These factual allegations sufficiently offer that Defendants acted with such a degree of culpability as to shock the conscience. Consequentially, Plaintiff has sufficiently established the second element of a state-created danger claim.

With regard to the third element of a state-created danger claim, a plaintiff must allege facts to show that there existed some relationship between the defendant and plaintiff such that the plaintiff was a foreseeable victim of defendant's acts or a member of a discrete class of persons subjected to the potential harm brought by Defendant's actions. *Kneipp*, 95 F.3d at 1205. "Under the state-created danger basis for alleging a constitutional violation, the relationship requirement 'contemplates some contact such that the plaintiff was a foreseeable victim of the defendant's acts in a tort sense.'" *Gremo v. Karlin*, 363 F. Supp. 2d 771, 789 (E.D. Pa) (2005) (quoting *Kneipp*, 95 F.3d at 1209 n.22). That is, the plaintiff cannot be alleged to be a foreseeable victim "if the state actors create[d] a threat to the general population only. . . ." *Morse*, 132 F.3d at 913.

Here, the relationship is clear; *to wit:* Laporshia was a six grade student at Bryant Academy. Defendants knew Laporshia was an asthmatic student and had "actual and/or constructive knowledge of the risks to asthma patients," namely, the risk that an asthma attack could lead to death if not immediately treated.[31] Subsequently, Laporshia suffered an asthma attack and was not permitted to use her medication without a nurse present.[32] Furthermore,

---

[30] *Id.* at ¶¶18, 22, 27, 38
[31] *Id.* at ¶20.
[32] *Id.* at ¶¶18, 22, 17, 38.

13

Defendants did not permit Laporshia to leave school to obtain medical care, despite the school's alleged policy and/or custom of not allowing the use of prescription medication without a nurse on duty. Accordingly, these factual allegations, as pled, are sufficient to substantiate Plaintiff's contention that Laporshia was a member of a discrete class of persons or a foreseeable victim, subject to the injury brought on by Defendants' conduct of keeping Laporshia at school instead of allowing her to seek medical attention. As such, Plaintiff sufficiently pleads the third element of a state-created danger claim.

Lastly, to establish the fourth element of a state-created danger claim, Plaintiff must state facts to show that (1) Defendants exercised their authority, (2) took an affirmative action, and (3) that the action taken created a danger to Laporshia or rendered her more vulnerable to danger than had Defendants not acted at all. *Ye v. United States*, 484 F.3d 634, 639 (3d Cir. 2007). "Liability under the state-created danger theory is predicated upon the states' affirmative acts," *D.R.*, 972 F.2d at 1374, which directly caused the Decedent's injury. *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 432 (3d Cir. 2006) (stating that "the fourth element is satisfied where the state's action was the 'but for cause' of the danger faced by the plaintiff."). "[It] is [the] misuse of state authority, rather than a failure to use it, that can violate the Due Process Clause." *Bright v. Westmoreland Cnty.*, 443 F.3d 276, 282 (3d Cir. 2006). Thus, in order to successfully plead the fourth element of a state-created danger claim, a plaintiff must sufficiently allege facts showing that an affirmative act was performed by a state actor and directed at the plaintiff. *See, e.g., Kneipp*, 95 F.3d at 1202-09 (holding police officers had "used their authority as . . . officers to create a dangerous situation" by relieving an inebriated woman's husband, thereby preventing him from from accompanying the woman home, and then sending her home alone).

14

Though surprisingly not mentioned in either party's brief, this Court finds instructive the matter of *Taylor v. Altoona Area School District*, 513 F. Supp. 2d 540 (W.D. Pa. 2007), a case which also involves a student who suffered an asthma attack at school and tragically died. *Id.* at 548. There, despite the teacher's concrete knowledge of prior asthma attacks, hospitalization due to those attacks, and serious risk of great harm to the student if asthma complications were not addressed properly, the teacher still "*refused*" to allow the student to contact his mother or the school nurse to "receive direct and/or immediate attention for the symptoms and deteriorating condition," despite the fact that contacting such individuals was part of the school's plan to help manage the student's asthma while at school. *Taylor*, 513 F. Supp. 2d at 545. (emphasis in original). Accordingly, the court there construed the plaintiff's allegations to successfully plead the fourth element because the teacher "*affirmatively prevented* [the student] from seeking medical attention that he would have otherwise sought on his own," acting in direct contrast to the school's medical protocol established to manage the student's asthma attacks. *Taylor*, 513 F. Supp. 2d at 548, 573 (emphasis in original).

Likewise, here, Plaintiff alleges that Defendants acted affirmatively to the detriment of Laporshia (1) by maintaining a policy and/or custom of not having a nurse on duty and not permitting students to use prescription medication without a nurse on duty,[33] (2) by keeping Laporshia at school despite her complaining of difficulty breathing and "[r]equir[ing] [her] to remain at the school despite the lack of any qualified personnel to render medical assistance,"[34] and (3) by not permitting Laporshia to obtain medical care despite Defendants' alleged knowledge of risk to Laporshia if an asthma attack was "not immediately treated and/or

---

[33] *Id.* at ¶¶21-22.
[34] *Id.* at ¶¶27, 49.

15

managed."[35] Like the plaintiff in *Taylor*, Plaintiff has sufficiently alleged affirmative acts committed by school officials, *i.e.,* that school actors prevented Laporshia from seeking medical attention and taking medication that she used to control her asthma, thereby creating a danger to Laporshia. Under the facts and circumstances pled, this Court finds that Plaintiff has sufficiently met the fourth element of a state-created danger claim. Because Plaintiff has sufficiently pled a state-created danger, Defendants' motion to dismiss Plaintiff's Fourteenth Amendment claim is denied.

### Claims against Principal Gaddy

Defendants argue that the claims against Principal Gaddy should be dismissed based upon the defense of qualified immunity. Though Defendants have provided the legal standard for qualified immunity, they fail to make any arguments as to its application, and only cursorily and vaguely state that "Principal Gaddy is entitled to immunity on every basis made available by *Carswell's* decision tree."[36]

Qualified immunity is an affirmative defense; thus, a defendant bears the burden of proving he is entitled to the defense. *Thomas v. Independence Twp.*, 463 F.3d 285, 292 (3d Cir. 2006) (holding that "[q]ualified immunity . . . is a defense available to the government official in question, [and] the burden of pleading it rests with the defendant.'") (quoting *Gomez v. Toledo*, 446 U.S. 635, 635-36 (1980)). When a defendant asserts qualified immunity, a court must decide whether the defendant is in fact protected from litigation. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "The doctrine of qualified immunity protects government officials from liability for

---

[35] *Id.* at ¶¶20, 38.

[36] In their motion to dismiss, Defendants state, "[i]n *Carswell*, 381 F.3d at 241-42, the Third Circuit summarized the various steps required in an analysis of qualified immunity[ ]," but fail to make any arguments as to those specific steps. Defendant's Motion to Dismiss at 11. The full citation of *Carswell* is *Carswell v. Borough of Homestead*, 381 F.3d 235, 241-42 (3d Cir. 2004).

civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). A plaintiff can overcome a qualified immunity defense where (1) the plaintiff has sufficiently stated that a constitutional right has been violated and (2) that the right was established at the time of the alleged violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). In a complaint, however, a plaintiff need not plead any facts in anticipation of a qualified immunity defense. *Thomas*, 463 F.3d at 292 (holding that "neither the language of §1983 nor its legislative history suggests that a plaintiff has the duty to plead facts relevant to a qualified immunity defense in order to state a claim.").

As set forth above, this Court has found that Plaintiff has sufficiently alleged constitutional violations of Laporshia's Fourth and Fourteenth Amendment rights. Because the Third Circuit has clearly held that the burden of pleading the defense of qualified immunity falls on the defendant, Defendants have not yet met their burden to sufficiently plead qualified immunity, and Plaintiff has sufficiently alleged constitutional violations, this Court finds it inappropriate to decide the issue of qualified immunity at this stage of litigation. Therefore, Defendants' motion to dismiss on qualified immunity grounds is denied. *See Gruenke v. Seip*, 225 F.3d 290, 299 (3d Cir. 2000) (holding that "[t]he evaluation of a qualified immunity defense is appropriate for summary judgment because the court's inquiry is primarily legal: whether the legal norms the defendant's conduct allegedly violated were clearly established.").

Defendants also contend that the supervisory liability claim against Principal Gaddy should be dismissed because there are no factual allegations as to Principal Gaddy's personal involvement or acquiescence to the events. Plaintiff sued Principal Gaddy both in her official and individual capacities for supervisory liability, claiming that Principal Gaddy was (1) a

policymaker who participated in promulgating the policy and/or custom that led to Decedent's constitutional harm, and (2) a supervisor who "directed and/or acquiesced to the [unconstitutional] conduct of those over whom she exercised supervisory authority."[37]

In a supervisory liability claim, a "[g]overnment official[ ] may not be held liable for unconstitutional conduct of [a] subordinate[ ] under a theory of *respondeat superior*." *Argueta v. U.S. Immigration & Customs Enforcement*, 643 F.3d 60, 71 (3d Cir. 2011). Likewise, it is "well established that a defendant in a civil rights case cannot be held liable for a constitutional violation which he or she neither participated in nor approved [of]." *C.H. ex rel. Z.H. v. Oliva*, 226 F.3d 198, 201 (3d Cir. 2000). Thus, to successfully allege a supervisory liability claim, a "defendant in a civil rights action must have personal involvement in the alleged wrongs." *Rode v. Dellarciprete*, 845 F.3d 1195, 1207 (3d Cir. 1998); *see also Argueta*, 226 F.3d at 71 (holding that a "plaintiff [seeking supervisory liability] must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

Personal involvement can be alleged under either one of the two theories. First, an individual defendant may be alleged to be a policymaker who, "with deliberate indifference to the consequences, established and maintained [a] policy, practice or custom which directly caused [the] constitutional harm." *A.M. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (quoting *Stoneking v. Bradford Area Sch. Dist.* 882 F.2d 720, 725 (3d Cir. 1989)). Second, an official may be held liable under supervisory liability, if "he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *Santiago v. Warminster Twp.*, 629 F.3d 121, 125 (3d Cir. 2010) (quoting *A.M.*, 372 F.3d at 586).

---

[37] Am. Compl. ¶56.

Defendants argue that Plaintiff fails to allege any personal involvement or acquiescence on the part of Principal Gaddy, and has not met the elements required under the second theory.[38] A careful reading of the amended complaint belies this argument. Plaintiff has pled facts to support a claim that Principal Gaddy "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in [her] subordinates' violations."*Id.* (citation omitted). Specifically, Plaintiff alleges that Principal Gaddy participated or acquiesced in violating Plaintiff's rights by not permitting Laporshia to obtain medical attention despite onset of respiratory issues and with the knowledge that an asthma attack, if not immediately treated or managed, could lead to death.[39]

As analyzed above, Plaintiff has sufficiently pled the circumstances of September 25, 2013, and that Defendants' alleged conduct led to a violation of Laporshia's constitutional rights under the state-created danger exception. In addition, Plaintiff contends that "[a]t all relevant times Defendant Principal Gaddy was aware of her subordinates' taking . . . action and directed them to take such conduct and/or acquiesced to their conduct."[40] Said unconstitutional conduct included "requiring Decedent to remain at the school despite the lack of qualified personnel to render medical assistance,"[41] notwithstanding Plaintiff's asthma attack and awareness by at least one subordinate, Teacher Doe, of the risk of death to Laporshia if the attack was not immediately managed.[42] Furthermore, Principal Gaddy is alleged to have known, or that she should have known, that her "directions and/or acquiescence to the conduct of those over whom she exercised supervisory control would have the effect of depriving Decedent of her rights under the . . .

---

[38] Notably, in their motion to dismiss, Defendants make no argument that Plaintiff has failed to plead the supervisory liability claim under the first theory.

[39] Am. Compl. ¶¶20, 38.

[40] *Id.* at ¶57.

[41] *Id.* at ¶56.

[42] *Id.* at ¶20.

Constitution [ ]."[43] Thus, under the second theory of liability, Plaintiff has alleged enough facts to infer that Principal Gaddy personally participated, directed, and/or acquiesced in violating Laporshia's Fourth and Fourteenth Amendment rights. Therefore, Plaintiff's supervisory liability claim survives dismissal.

### *Monell Claim against the School District of Philadelphia*

Plaintiff asserts a *Monell* claim against Defendant District for its alleged constitutional violations of Laporshia's Fourth and Fourteenth Amendments rights. Specifically, Plaintiff contends that Defendant District established a policy and/or custom that led to the illegal seizure and state-created danger and deprivation of Laporshia's rights to liberty and life.[44] Defendants move to dismiss this *Monell* claim because Plaintiff has not alleged facts to support a violation of Laporshia's constitutional rights or the unconstitutionality of the policy at issue. As discussed, Plaintiff has sufficiently pled a violation of Decedent's Fourth and Fourteenth Amendment rights, and this issue need not be re-analyzed.

As to the issue of the unconstitutionality of the policy and/or custom, a governmental entity, such as a public school or school district, may not be held liable under §1983 for constitutional violations caused by its employees or agents based solely on the principle of *respondeat superior*. *Monell*, 463 U.S. at 690. Rather, liability exists for a municipality for its "deliberate conduct" only when the municipality "was the 'moving force behind the injury alleged.'" *Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997); *see also Daniels*, 982 F. Supp. 2d at 477 (holding that a municipality's "policy or practice must be the 'moving force' behind the constitutional violation.'"). Thus, liability may be imposed on a public entity only when its official policy and/or custom causes an employee to violate another person's constitutional rights.

---

[43] *Id.* at ¶58.
[44] *Id.* at ¶¶38, 40.

*See Brown*, 456 F. App'x at 90 ("For the School District itself to be liable, 'any injury must be inflicted by execution of [its] policy or custom.'") (citing *Santiago*, 629 F.3d at 135).

As set forth by the Third Circuit Court:

> A governmental policy or custom can be established in two ways. [1] Policy is made when a "decision maker possess[ing] final authority to establish municipal policy with respect to the action" issues an official proclamation, policy, or edict. [2] A course of conduct is considered to be a "custom" when, though not authorized by law, "such practices of state officials [are] so permanent and well-settled" as to virtually constitute law.

*Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990).

In either instance, "a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of policy or [an] acquiescence in a well-settled custom." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990); *see also Santiago*, 629 F.3d at 135 n.11 ("While . . . whether [a supervisor] is a final policymaker is ultimately a legal rather than a factual question, [ ] that does not relieve [plaintiff] of the obligation to plead in some fashion that [the supervisor] had final policy making authority, as that is a key element of a *Monell* claim."). Additionally, at the pleading stage, a claimant "must identify a custom or policy, and specify what exactly that custom or policy was." *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009).

Here, Plaintiff sufficiently alleges facts to meet all elements of a *Monell* claim. First, Plaintiff has pled "in some fashion, that [an official] had final policy making authority." *Santiago*, 629 F.3d at 135 n.11. that is, Plaintiff alleges that the "School District of Philadelphia, and W.C. Bryant Academy acted through high level, responsible policymakers, including without limitation, the School Reform Commission, Superintendent William R. Hite, Jr., Deputy Superintendent Paul Kihn, Chief Financial Officer Mathew Stanski, Chief of Student Services

21

Karen T. Lynch, Defendant Gaddy and/or other individuals [ ] who promulgated policies and procedures and/or acquiesced in a longstanding custom or practice. . . ."[45] Second, Plaintiff has adequately specified the exact custom or policy that caused constitutional harm, *i.e.,* the school policy and/or custom that students could not "possess" or "use prescribed medication at the school without the supervision of a nurse"[46] and that the absence of a nurse on the day of Laporshia's asthma attack was "the result of decisions by Defendants, acting through high-level policymakers with final authority and/or acqui[e]scing to a longstanding custom and/or practice known to such high-level policymakers."[47] Plaintiff has also adequately alleged that a policy and/or custom was the "moving force" behind the constitutional harm, *Daniels*, 982 F. Supp. 2d at 477, by alleging that "Defendants' conduct . . . pursuant to the policies and customs of Defendants [ ] School District of Philadelphia and W.C. Bryant Academy, violated Laporshia Massey's rights pursuant to the Fourteenth Amendment [ .]"[48] As discussed, such policies and/or customs are alleged to have caused an illegal seizure and created a state-created danger, which resulted in the exacerbation of Laporshia's asthmatic condition and Laporshia being prevented from obtaining medical care. In light of these facts, Plaintiff has sufficiently alleged a *Monell* claim—the existence of a policy or custom which caused an employee to violate another person's constitutional rights. Accordingly, Defendants' motion to dismiss this particular claim is denied.

## *Remaining State Law Claims*

In Counts V and VI, Plaintiff asserts wrongful death and survival action claims against Defendants. Defendants contend that both claims should be dismissed against the District and Principal Gaddy because they are immune to suit under the Political Subdivision Tort Claims Act

---

[45] *Id.* at ¶62.
[46] *Id.* at ¶22.
[47] *Id.* at ¶21.
[48] *Id.* at ¶63.

22

("Tort Claims Act"), 42 Pa. C.S. §8501 *et seq* (2001). Specifically, Defendants argue that the Tort Claims Act bars suit against the District because it is a local agency, and against Principal Gaddy, who is an employee of the School District.

The Tort Claims Act grants immunity to local agencies and provides that "no local agency shall be liable for any damages on account of any injury to a person or property" unless the injury was "caused by the negligent acts of the local agency" and the negligence falls within one of its eight enumerated exceptions.[49] *Edison Learning, Inc. v. Sch. Dist. of Phila.*, 56 F. Supp. 3d 674, 680 (citing 42 Pa. C.S. §§8541-8542). For purposes of the Tort Claims Act, a school district is considered a local agency. *Edison*, 56 F. Supp. 3d at 680 (stating "the [Philadelphia] School District is an agency of the City of Philadelphia" for purposes of the Tort Claims Act).

Section 8542(a) of the Tort Claims Act provides that "'negligent acts' shall not include acts or conduct which constitutes a crime, actual fraud, actual malice or willful misconduct." 42 Pa. C.S. §8542(a). Section 8550, governing willful misconduct, further provides:

> In any action against a local agency or employee thereof for damages on account of an injury caused by the act of the employee in which it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice or willful misconduct, the provisions of sections 8545 (relating to official liability generally), 8546 (relating to defense of official immunity), 8548 (relating to indemnity) and 8549 (relating to limitation on damages) shall not apply.

Thus, a local agency or its employee that engages in willful misconduct cannot claim immunity under the Tort Claims Act. 42 Pa. C.S. §§8542(a), 8550; *see also R.H.S. v. Allegheny Cnty. Dep't*

---

[49] The eight exceptions enumerated in §8542 of the Tort Claims Act are as follows: (1) vehicle liability; (2) care, custody, control of personal property; (3) real property; (4) trees, traffic controls and street lighting; (5) utility service facilities; (6) streets; (7) sidewalks; and (8) care, custody or control of animals. 42 Pa. C.S. §8542.

*of Human Serv.*, 936 A.2d 1218, 1230 (Pa. Commw. Ct. 2007) (holding that immunity under the "Tort Claims Act [ ] does not apply where it is judicially determined that the act of the employee or agency causing the injury constituted a crime, actual fraud, malice or willful misconduct.")

Under the Tort Claims Act, willful misconduct is synonymous to an intentional tort. *R.H.S.*, 936 A.2d at 1230. That is, the actor "desired to bring about the result that followed, or at least [ ] he was aware that it was substantially certain to ensue." *Id.* (citing *Evans v. Phila. Transp. Co.*, 212 A.2d 440, 443 (Pa. 1965)); *Orange Stones Co. v. City of Reading*, 87 A.3d 1014, 1022 (Pa. Commw. Ct. 2014) (holding that "willful misconduct occurs when the actor 'desired to bring about the result that followed, or at least that he was aware that it was substantially certain to ensue.'") (quoting *R.H.S.*, 936 A.2d at 1230).

While the present case clearly does not fall within one of the eight exceptions delineated in 42 Pa. C.S. §8542, Plaintiff has sufficiently pled Defendants' willful misconduct such that Defendants' argument for immunity under the Tort Claims Act cannot be raised at this time. Specifically, Plaintiff contends that Defendants' conduct was "unreasonably, recklessly, willfully, and deliberately indifferent to the health, safety, and well-being of Laporshia Massey."[50] Such conduct by Defendants included, *inter alia,* not permitting Laporshia to use her medication without a nurse present and not permitting her to leave school to obtain medical care despite the lack of qualified personnel to provide medical assistance,[51] following policies and/or customs whereby there was no nurse on duty during Decedent's asthma attack,[52] and Principal Gaddy being personally involved in conduct that led to constitutional harm.[53] Defendants District and Principal Gaddy knew or should have known that, under the facts as pled, Laporshia's injury was

---

[50] *Id. at* ¶¶36, 61.
[51] *Id. at* ¶¶38, 49.
[52] *Id. at* ¶¶21.
[53] *Id. at* ¶56.

24

substantially certain to ensue. Plaintiff has sufficiently pled conduct of a willful nature. As such, Defendants contention of immunity under the Tort Claims Act fails, at this time.[54]

### Claims Against Bryant Academy

Defendant Bryant Academy argues that the claims against it should be dismissed since it is not a legal entity separate from the School District. This Court agrees.[55] *See generally Gremo*, 363 F. Supp. 2d at 782 (holding that suits against the Philadelphia police department are made against the City of Philadelphia).

In addition, Bryant Academy seeks the dismissal of the *Monell* claims asserted against it since Plaintiff has failed to allege that Bryant Academy is a municipal entity. This Court again agrees and will dismiss Plaintiff's *Monell* claim against Bryant Academy. *See, e.g., Allen v. Sch. Dist. of Phila.*, 2006 WL 1997373, at *3 (E.D. Pa. July 12, 2006) (noting that a school is not a municipality held liable under *Monell* because "the holding in *Monell* is limited to 'local government units not considered part of the State for Eleventh Amendment purposes.'") (quoting *Monell*, 436 U.S. at 690 n.54).

---

[54] Plaintiff contends that "[t]o the extent that the damages scheme of Section 1983 does not provide for recovery of that [which] would be recoverable under 42 Pa. C.S. §§8301 and 8302, Section 1988 compel[s] application of those sections of state law to fill the gaps." Pl.'s Br. 14. Plaintiff's argument, however, is premature. Section 1988 "merely affords a basis for an award of attorneys' fees if plaintiff is successful in litigation." *Viney v. Flynn*, 1991 WL 161071, at *1 (E.D. Pa. Aug. 15, 1991). Plaintiff has yet to succeed in litigation, thus Plaintiff's reliance on §1988 is misguided, making it inapplicable to the present case.

[55] This Court takes judicial notice of the fact that Bryant Academy is one of many elementary school buildings in the District and is of the view that a mere building cannot be a proper party to a civil rights suit. *See Book v. Hampton Twp. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) ("In evaluating a motion to dismiss, we may consider . . . 'matters of public record.'") (citing 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedures §1357 (3d ed. 2004)).

25

**CONCLUSION**

For the reasons stated herein, Defendants' motion to dismiss is granted, *in part*, and denied, *in part*. An Order consistent with this Memorandum Opinion follows.


NITZA I. QUIÑONES ALEJANDRO, U.S.D.C. J.